Your case today is Noreen Sassino v. Work Out World. Mr. Sastra. Good morning. May it please the Court, my name is Tim Sastra and I represent the plaintiff appellant Noreen Sassino. If I may reserve five minutes for rebuttal, please.  Thank you, Your Honors. The appellate Work Out World placed an unsolicited telemarketing robocall to the cellular telephone number of Ms. Sassino in violation of the Telephone Consumer Protection Act. This Court should join both the Second Circuit and the Ninth Circuit, which have held that the mere receipt of such a call is a concrete injury in fact. In the Lifetime case, the Second Circuit decided after the Spokane decision that the receipt of even a single call that went to an answering machine was a concrete injury. In Van Patten, the Ninth Circuit, also after the Spokane decision, decided that the receipt of two calls were a concrete injury. In this case, there are several concrete injuries in fact alleged in the complaint. One of them is the receipt of the call. Another is the violation of Ms. Sassino's substantive rights under the TCPA. Also, that the voicemail occupied the physical storage space in her voicemail. It depleted her cell phone battery. She lost time attending to the call and it invaded her privacy. If the Court finds that any one of these injuries is concrete, then it should vacate the District Court's ruling. So what does concrete mean? Per Spokio, concrete means real, not abstract. But the District Court found that Sassino's injuries weren't concrete, but not because they weren't real, but rather because they weren't significant, because they were de minimis in the Court's view. This Court should vacate that ruling because a finding of de minimis injury can never justify dismissal for lack of jurisdiction. This Court held in the Freedom from Religion Foundation case that there's no minimum quantitative threshold to show injury. The Supreme Court more than 40 years ago in the Scrapp case said that even an identifiable trifle will suffice. The receipt of this robocall is clearly identifiable and it's more than a trifle. The FCC in 2015 said that the number one consumer complaint it receives is about these robocalls. When Congress enacted the TCPA, it found that robocalls were a nuisance and invasion of privacy. If we're going to be looking at the TCPA itself for the source of injury, you're arguing that, in contrast to your colleague on the other side of the aisle, that there's no requirement of economic harm. How do we square that with the plain language of the provision in the 1992 FCC regulation that seems to say explicitly that the TCPA did not intend to prohibit calls for which the party is not charged? Well, I think the FCC has revisited that ruling. But if you also look at the plain language of the statute, the statute provides the FCC with authority to create exemptions for calls made to cell phones that are not charged to the call party. And so as the 11th Circuit said in the Osorio case, there'd be no reason to provide for that exemption authority if they were already exempt in the first place. So the other thing that you look at is the plain language of the provision at issue, which prohibits robocalls to cell phones or, in the disjunctive, any service for which there's a call party. And the 11th Circuit in Osorio found that that language on its face indicated that you did not need to show that there was a monetary charge as a result of the call in order to state a claim under that section. Can you address our case in Horizon? Because it seems like Horizon may answer a good part of this case. And in your 28-J, you indicate that it does. But is Horizon distinguishable to the extent it's addressing disclosure of information, something different than a different nature of privacy invasion than we have here in the TCPA? Well, I think in both cases they are an injury that Congress recognizes as harmful. And in Horizon, the court said, you've alleged the disclosure, which is the violation of the statute. We don't even need to know if you were harmed as a result of that disclosure. We don't even need to know if you have a risk of harm as a result of that disclosure. It's the substantive violation that creates the concrete injury. And I don't think that there's any significant difference that you could point to when you have in both statutes Congress saying, we believe this is harmful and therefore giving a private right of action to a plaintiff in the TCPA receives even one of these phone calls. But Spokio says that's not enough, right? Spokio makes clear that Congress can't redefine Article III standing. Spokio does say that Congress can't redefine Article III standing. But Spokio does not preclude the finding that some statutory violations are, in fact, sufficient concrete injuries in and of themselves. And that's in the text of Spokio, and that's this court's ruling in Antarctica Horizon. But we know from Spokio that there might be some fair procedural violations that would not in and of themselves be sufficient. But we know that, in some cases, some statutory violations are in themselves concrete injuries. In the court in Antarctica Horizon. Let's focus on these facts. You've alleged seven different types of injury. Which is the most concrete harm that your client suffered? I don't know if I could point to one as the most concrete. There are a few. They're all concrete. So she actually received the call. This is an identifiable event that she's alleging as a harm. It's a perfectly concrete, discrete, tangible thing that happened to her. The occupation of her voicemail space. We know that the message was one minute long, so we know that it took up one minute of her voicemail space that could have been reserved for messages that she wanted. So they're all concrete, I believe. And certainly the violation itself is concrete in that there's the placement of the phone call. So another thing is to just assume that the TCPA doesn't exist. I mean, if Cicino's claim were for a tort, for intrusion upon seclusion, or trespass to chattels, all these injuries would still be concrete injuries. So that's a bar higher than you need. You don't actually need to be able to state a claim. Absolutely not. But for purposes of this discussion, assume that the TCPA doesn't exist. The question of whether she would succeed on those claims is distinct from the question of does the court have jurisdiction. You're saying you might lose on your intrusion upon seclusion claim, but you have an intrusion upon seclusion claim. Well, we have not. Just to be clear. It might not be a good one, but you have standing to bring it. Correct. And so it's a distinct question. And so now here's what's undisputed. Congress can elevate identifiable injuries to be cognizable at law. And so what has Congress done with the TCPA? It's identified a harm, it's banned these calls to cell phones, and it says if you receive one, you can sue for statutory damages. So Congress has elevated an identifiable injury. Even if it wasn't actionable at law under tort law, it now is actionable through the TCPA. Mr. Sussman, can you help us work through, there's been a lot of confusion in the case law in Spokio about what's procedural, what's substantive. Sure. And are we talking here about a procedural type of violation? The violation in Spokio is described as procedural, but in terms of what it encompasses is certainly not the kind of technical procedural violation that we sometimes associate with procedural per se. Right. I don't think there's anything procedural about what happens in this case. The Supreme Court in Mims in a TCPA case addressing subject matter jurisdiction for calls to cell phones said that the TCPA enacts substantive rights to be free from these calls. So the court doesn't even need to decide how you differentiate substantive between procedural. The Supreme Court has already decided that these are substantive rights here. But in the abstract, I think that a substantive right is something where if you're dealing with conduct that's addressed to a particular person directly, and you have a law that's saying you can't do that to that person, that's a substantive right. There's nothing procedural about it. But why wouldn't that description apply just as well to the disclosure of consumer data, the inaccurate consumer data in Spokio itself? Well, this court in Henry Horizon found that the disclosure of data was a substantive right. So I think that there is something there. And as Justice Thomas put out in his concurrence, it might not always be clear, but it's clear in this case. And as the court said in Henry Horizon, we don't need to figure this out because we know that what we see here is a clear substantive clear violation. So you take the position that either the procedural rights that were addressed in Spokio were so broad that they could encompass a right like this, or that this should be deemed a substantive right? Right. And I think Justice Thomas in his concurrence said something along the lines of, if it's a requirement that applies to society as a whole, like maintaining reasonable procedures, which is not directed to any particular consumer, then you would have to show concrete harm beyond that. But this is a violation. True, but the jury didn't adopt quite that approach. Well, sure, but there is no – so that's guidance. There isn't any definitive answer to that question. And so that's guidance that I think is persuasive there. The other thing that Spokio was concerned about is not just whether this is a procedural violation, but whether it's – it used the term bare. Is it a bare procedural violation that is divorced from any concrete harm? And so here we have not just a violation of the statute, we have the result of the violation, which is that she actually received the call. It had a real-world effect on her that affected her personally and affected her property, her cell phone. So it's not divorced from any real-world impact. It actually had a real effect on her. Is there a way that we can take account of real-world effects that are so de minimis that we might conclude Congress didn't intend those to be covered by the statute? Well, I think if Congress – if the plain law of the statute allows for, as in this case, a claim for statutory damages to recover for, in this case, the receipt of a call, then Congress intended for that to be a harm that it was trying to protect against. But I think most importantly, if you look at the Supreme Court's decision in Scrapp, the Court rejected the idea that there should be a test about significant injury. It said this is unworkable. The idea is all you need is something that's identifiable, something that is concrete, where the plaintiff is saying, I'm aggrieved by this, and here's a concrete injury that the court can look at to decide the case. It's not about significance. It's about what am I trying to decide here, and how do I issue a rule? But at the same time, in Spokio, the Court's making a distinction between disclosures of some inaccurate data that may be sufficiently concrete, someone's marital status, things along those lines, versus zip code. I mean, isn't the Court itself, even in its reasoning in Spokio, recognizing that there may, within the same statute, and the nature of the violation is still the disclosure, but there can be things that are so de minimis that they would not rise to the level of creating Article III standing? Well, I don't think that Spokio said this might be de minimis. It said there might not be any concrete injury. And so I think we have to be careful about if you have an identifiable injury, it doesn't matter how small it might be. How about an inaccurate zip code? Well, with respect to that, Spokio said it's hard to imagine how this might inflict a concrete injury, but it wasn't a decision that actually remanded to the Ninth Circuit to actually address this. It didn't say if you have a zip code violation, then there is no concrete injury per se. It just said it's hard to imagine. And so with respect to the TCPA, there's nothing in the statute that indicates that Congress would consider the actual receipt of one of these calls that it found to be a nuisance invasion of privacy to not merit its attention or to not fall in with what its concerns were. It granted a private right of action for a receipt of one call, and it knew how to require more calls for other causes of action because there are other provisions in the TCPA, one of which has to do with the do-not-call regulations. And it said that for a violation of the do-not-call regulations, you have to show that you received two or more of these calls within a 12-month period. For the provision at issue here, which is calls to cell phones, with robocalls to cell phones, one call is enough. You sue for one violation. And so I think Congress's intent was clear. What if Workout World had not left a voicemail? Would you still have standing? So in that scenario, she answered the call when it rang? No. So they hung up after? Right. So the nuisance is I've got these calls on my cell phone that I've neither answered nor they left a message, but, you know, I've got to scroll through my phone when I'm looking for a real person I want to talk to. Right. So there's that. But is that enough? You think that's enough? I do. But beyond that, I think that there was still an occupation. That's because the statute says it's enough. So, yes, partly. Right. But even if you're on solid ground on that, you have to get to the next level of concreteness. Right. And what common law analog would you cite to say that there's a concrete harm under that hypothetical? Well, there's still, so if the phone rings, there's still an invasion of privacy. This is something that Congress was concerned about when it enacted the act. It talked about, you know, phones ringing, people being disturbed by that. But also look at the 11th Circuit case in Palm Beach. In that case, the court addressed a fax claim under the TCPA, and there was one fax, and the evidence showed that nobody looked at it, nobody even saw it. And the 11th Circuit said that this occupation of the phone line, which affects a property interest, and that itself is a concrete injury. So I see my time's up. Try to stabilize the question. So my phone is back in my chambers right now. If I get a robocall from a vendor and I don't answer it, is there a harm? Is there a TCPA violation? Yes. Number one, your substantive rights under the TCPA were violated. Number two, the calls still occupied your telephone line. The 11th Circuit Palm Beach case I just discussed. So that affects your property interest. And I think those are all concrete injuries, as small as they might be, that provide jurisdiction for the court.  Thank you. We'll hear from you, brother. Thank you, Your Honor. Mr. Boucher? Boucher, yes, Your Honor. Boucher, I'm sorry. It's quite all right. Good morning, Your Honors. Good morning. May it please the Court, Joshua Boucher with the law firm of Ansel Grimm and Aaron on behalf of Workout World. There is no concrete injury here, Your Honors, and appellants travel two parallel paths seeking to have this court impose the same mistaken idea. The first is that the violation of the statute alone can permit standing. Well, I don't think they argued that. I mean, and you have to throw in the towel on that, right? The statute clearly says there's a harm, but you may prevail at the next level. I think it's the next level. I think it's the prior level. It's to the left. You need to establish standing before you can establish the violation of the statute. It's a prerequisite to doing so. Well, but the way the statute is written, one call is enough for harm to occur. One call is enough for a violation of the statute. One call is not necessarily enough to establish the concrete harm required for standing to assert a claim under the statute. Well, but if one call is not enough, then we're writing the statute off the books, right? The statute is clearly intended to protect consumers from getting hit with robocalls, is it not? Yes, but in order to assert a claim under the statute, you, of course, first have to have standing. As Spokio has made clear, to establish standing, the first element is concreteness and particularization. There's no concrete harm here for a number of reasons. But why isn't the harm—I'm having trouble with that, Abinicio, because the way the statute is written, Congress is telling people in the country that they are harmed by robocalls. Otherwise, why was the statute passed? That's the whole point of the statute. I respectfully disagree. Then what's the point of the statute? What evil is this statute trying to protect everyone from? The point of the statute, as Spokio set forth, it enables Congress— Forget Spokio. Let's look at the statute, because, I mean, I wanted to get to Spokio, because I think this case is about whether Spokio saves you from a statute that indicates there is harm here. But if you want to fight the battle at the first level, then that's fine. So if we're going to do it at the first level, we have to look at the language of the statute and tell us why what is alleged here is not directly addressed by the language of the statute. Perhaps it's the distinction between harm and injury. So if you're suggesting that the statute protects against the harm of that call, I would agree. My argument is that there's not a concrete injury, which is the predicate for standing, of the type that— So Cicino is harmed, but she's not injured. The statute seeks to protect against certain types of harm. Cicino didn't suffer the type of harm that the statute seeks to protect against, because the statute— and there's a number of reasons for this, and if you'll allow me, there's a few things. First, the statute with respect to the invasion of privacy only applies to subparagraph A, and the language of the statute makes that clear, and the legislative history of the statute makes that clear. Subparagraph B was intended to protect against calls to residential landlines, and the legislative history is replete with instances where Congress enacted that subparagraph to protect against calls to the home. The harm arising from calls to the home is an invasion of privacy. It is wholly inapplicable here. Because this is a cell phone? Correct. There's a very distinct section— When was the law passed? 1991. And cell phones were ubiquitous then? They certainly were not. But if Congress seeks to change the law— And Congress wasn't intending generally to protect people from having their privacy intruded upon by robocalls? If they were— Even if we agree, as makes sense, I think, to say that our privacy is more valuable in the home than outside the home, do we not have privacy interests outside the home? The statute is written as it is written. Congress— It is written as it's written, and your brief immediately launches into legislative history over and over again, which is usually a signal that you're not on such solid footing with the statutory language itself. Well, we are. We're simply trying to explain why there's two different types of injuries arising from subparagraph B and a subparagraph C claim. Adopting that interpretation, Your Honor, would mean that there would not need to be subparagraphs. Well, let's look at the language of the statute. Why don't you tell us exactly what the relevant statutory language is, and then tell us why where Cicino alleged— Absolutely. A subparagraph B claim seeks to prevent prerecorded voice messages to calls to residential telephone lines. A subparagraph A claim, which is— Wait, wait. Go a little slower. Sure. Just read from the statutory language itself. B-1-B. It shall be unlawful, right? Sorry, Your Honor. I've got the statute over here. I was actually quoting from MIMS. Yeah. But subparagraph B addresses residential telephone lines. Well, let's look at the statute. Okay. Doesn't it say it shall be unlawful? It does. It should be unlawful for any person to do what? To make any call. Correct. Right? Right. And then sub-3 says, to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the call party is charged for a call. Right. Exactly. So if there was no distinction between sub-B and sub-A, they would have only needed the one subparagraph. So subparagraph— Where's B? What I just read from doesn't address B, I don't think. I was looking at A-3. And I'm pointing to B-1-B, Your Honor, 227-B-1-B, which is the case law, which is A-3. Well, no, forget about the case law. We're looking at the statutory language for now. Are you saying that the statutory language to which I just made reference doesn't apply in this case? I'm saying that it doesn't apply to evasion of privacy claims. The subsection A-3— The cause of action is you have violated the TCPA. Right. And I just read language from the TCPA, and I'm asking you, what about the language I just read does not map directly onto the plaintiff's TCPA claim in this case? The plaintiff's claim that there was an invasion of privacy arising from the call does not map directly with the subparagraph A-3 claim because the invasion of privacy, the harm that Congress sought to protect against arising from an invasion of privacy, is in subparagraph B-1-B, not subparagraph— How do you square that with B-2-C that expressly enables the FCC to pass regulations in the interest of the privacy rights in this section is intended to protect? This section includes B-1-A-3. I recognize that. But, again, why would there be a—and I recognize I'm not supposed to ask you questions. But the fact that Congress passed—enacted subparagraph B and subparagraph A suggests that they were distinguishing between calls to homes and calls to other devices for which the recipient is charged for the call. There's a clear distinction in both the statute and the legislative history in that regard, which is why we think it's critical. And the recent case in Lifetime, which they cited to recently, which they recently submitted, is a subparagraph B case, a call to a residential answering machine. Those are the invasion of privacy claims. Those are the cases where the legislative history is clear. It was calls to the home. Very distinctly, Congress enacted subparagraph A-3. If it was all the same, if everything related to invasions of privacy, regardless of whether it's a cell phone, pager, or residential landline, there would be no need for there to be a subparagraph B and a subparagraph A-3. At a minimum, there's ambiguity. And then we have guidance from the agency, right? And that goes beyond the regulation that I was quoting earlier. That goes also to the 2003 guidance, to the 2008 guidance, where the FCC says explicitly that it's unlawful under A-3 to make any call to any cell phone. And then, of course, with the 2015 guidance recognizing the proliferation of cell phones and taking over for nearly, even at that point, close to half of the population replacing residential landlines, the FCC seems to have interpreted the statute in a way that would encompass calls to cell phones as creating a privacy violation. And under Chevron, I recognize that the discretion afforded that agency, but we also, where there is ambiguity, need to look to the legislative history.  that the privacy issue is distinct to the home and doesn't apply to cellular devices. There are two different harms they were trying to address. Even if there are two different harms, where does it say this does not apply to cell phones? I didn't remember seeing that. The privacy injury? What is the this in your question, Ron? I'm sorry. I was referring to the this that you were using. I guess what I'm challenging you on, Mr. Brockner, is that even accepting that the privacy concerns are more acute in the home than outside the home, it seemed to me an overreach to suggest that Congress was unconcerned with privacy outside the home. Do you see the distinction? The A-3 harm that Congress sought to protect against was an economic injury, an economic loss arising from calls to devices for which the user is charged for the call. Well, the problem with that is the or, right? I mean, don't we have to avoid the rule of the last antecedent to agree with what you just said there? We don't. We actually only have to look to MIMS from the U.S. Supreme Court. And when the MIMS court was identifying the unlawful acts under the statute, they actually inserted the word other. And in the MIMS case, they say that is calls to a pager, cellular telephone, or other service for which the receiver is charged for the call. And Justice Scalia wrote MIMS, and he's one for adhering to the language of the statute. So his own interpretation of the statute is that it is another service for which the user is charged for the call. And for the Court's convenience, that's at 745 in MIMS. Although, again, we have the FCC weighing in and saying that whether a recipient is charged by the minute or as part of a package, it recognizes that there's economic harm. And so it's not tying it in its more recent guidance to economic harm. That may be the case, but here the plaintiff doesn't allege any economic loss. The plaintiff alleges invasion of privacy and the other harms that you identified. There's no allegation in the complaint that she suffered that type of an economic loss. So let's move to Horizon, because why doesn't Horizon address whether invasion of privacy is enough, recognized there as not only associated with the kinds of harms that could traditionally be vindicated in American and English courts, but also identifying a similar kind of right as a substantive one, not even procedural? Two reasons. First, again, we don't believe that an invasion of privacy harm arises from an A3 claim. It's an economic loss. And second, we believe, and this is where I was starting with my two parallel paths argument, that the substantive procedural distinction has been blown out of proportion and has too been used in an attempt to show that the mere violation of a statute establishes standing, which, of course, has been rejected squarely. Move down by Horizon. So how would you distinguish the reasoning of Horizon, which itself relied on Google and Nickelodeon? And the harm in those cases, much more analogous to the situation we have, involved the placement of cookies onto a computer, the invasion of privacy onto a computer, that then allowed collection of information. Right. And again, we're getting back to an invasion of privacy, which is not the harm, the type of harm Congress sought to protect against in subparagraph A3. And second, the mere violation of a substantive right does not in and of itself convey standing. You still need the concrete injury. Let's say we disagree with you about whether the TCPA was designed to address an invasion of privacy. If we conclude that it was and we're bound by Horizon, at that point, do you lose? No, because there again, if you find that subparagraph A3 incorporates an invasion of privacy harm, you then have to determine whether there was an invasion of privacy here. And we, of course, contend there wasn't. The standard of common law for an invasion of privacy is highly offensive conduct, which just doesn't exist here. And as Judge Stanley mentioned before, it can't on these facts. If her voicemail was full and no message was ever left, would there still be an injury? If she never listened to the voicemail, if she never actually affirmatively elected to listen to the voicemail or just went to her voicemail, would there still be an injury? That concreteness, that level of harm that Congress was intending to protect against. So if she got 50 robocalls in a day and didn't answer any of them, no harm? Was she hearing the phone ring, sir? No. She was at work, and she came home, and she had a voicemail. In order to retrieve that, she had to scroll through 50 robocalls. That's different. Yes, there is harm. Why? Because the invasion of her time and effort in scrolling through those 50 robocalls. So it's not all about economic harm, then? I thought the dichotomy you set up for most of the argument was it's to a cell phone. I'm sorry, this is her cell phone at home? I thought it was her home phone. No, her cell phone. Her cell phone is home. She comes home from work. If she gets 50 robocalls, there's no harm. It's not cognizable. She has no harm, no standing. Unless she can establish and allege an economic loss arising from her cell phone. I think you've really helped us, then. Your argument is based on the dichotomy between privacy harms and economic harm, and the premise of your argument is that with respect to home phones, landlines, the privacy concerns are salient, there is standing, but with respect to cell phones, absent economic harm, no standing. That's what Congress says.  The second part, and I realize I'm out of time, goes to the substantive procedural distinction. Absolutely. And the mere violation of a substantive right not being enough to satisfy standing, and that, in fact, all of that argument comes from Thomas' concurrence, which wasn't adopted by any of the other justices. All right. Well, perhaps Mr. Pincus will pick up. I'm sure he will. Thank you, Mr. Block. Thank you very much. Thank you, Your Honor. Good morning, and may it please the Court. Andrew Pincus for the U.S. Chamber of Commerce. I think I'll start where my colleague ended, and it really goes to the question that Judge Hardiman was asking at the beginning of my colleague's argument. I think the difference here is between what Spokio held is a statutory violation does not automatically establish concrete harm. So I'm not going to argue there's no statutory violation here. I think the question is, is there concrete harm? And just to get the procedural versus substantive issue off the table, although Spokio, the opinion characterized one of the claims there as procedural, a number of courts, including the Seventh Circuit and the D.C. Circuit, have recognized that that doesn't mean that Spokio's rule is limited to procedural claims. They've explicitly held that it extends to both procedural and substantive claims, because, of course, Article III requires standing across the board. So I think the question is, is there concrete harm here? And I think the next question under Spokio is, did Congress in the statute expand, elevate, some things that would not ordinarily be considered concrete harm to be concrete harm? Certainly the mere fact- Or perhaps address modern technology that doesn't fit neatly into British common law, you know, foxes coming onto your property or what have you, right? I mean, we're dealing with the brave new world, and so that's our challenge, is it not, to try to map what the statute says onto historically understood torts. I think that's right, Your Honor. I think there are two challenges. First, did Congress itself say, as Spokio put it, that some harms that might not previously or otherwise be recognized as concrete should be? And then if Congress did do that, there's a question about whether Article III permits it. If Congress didn't do that, then the court has to apply generally applicable Article III concrete injury questions, standards to decide whether there's harm. So addressing that first question, did Congress here elevate harms, identify harms that otherwise would not have been actionable,  merely creating a cause of action and providing for statutory damages can't do that, otherwise Spokio would come out the other way. Right, but the court gave us guidance saying what you do then is we're to look to a kind of history test. And is there, does the harm have a close relationship with this harm? There was a traditionally associated with basis for suit in the courts. Now we also have Horizon intervening between Spokio and the filing of the Ramicus brief. Haven't we answered that as to the right to privacy in Spokio? That is, recognizing what Congress was doing wasn't elevating something that did not have that kind of association, but that our court has already held did have that association. I don't think so, Your Honor, and let me give you a couple of reasons. I think Spokio set up two tests. The threshold question is did Congress in this statute elevate an injury that otherwise might not be considered concrete? So the first question before you even get to the historical question is, is there something in this statute that indicates that Congress meant to provide access to courts for people who otherwise under generally applicable Article III standards wouldn't get in? Let's assume the answer is yes for purposes. Well, can I explain why the answer is no first? Sure. I think the answer is no for two reasons. First of all, all we have here is a statutory cause of action plus statutory damages. Nobody's pointed to anything in the statute beyond that that says Congress meant to expand who gets into court, and as I said, that's exactly what was before the court in Spokio, and if that had been enough, we would have lost Spokio. I think there's another reason here that further supports that conclusion. Looking to the cause of action section, subparagraph 3, as Mims pointed out, this is an unusual statute because it doesn't explicitly create a federal cause of action. All it explicitly creates is a cause of action that can be brought in state courts, and as Mims said, but of course it doesn't negate a federal cause of action. In the provision creating the state cause of action, Congress said, if otherwise permitted by the laws or rules of a court of a state, bring in an appropriate court. It seems to me that language is pretty clearly saying we're not doing anything to expand access to courts. We're creating a cause of action that can otherwise be brought, and it certainly doesn't say anything about expanding access to federal courts because it doesn't say anything about federal courts. So I think here we have some really clear language that Congress was not doing anything to elevate injuries that otherwise wouldn't be actionable. What Congress was doing, as it often does, is create a cause of action and say, if people are injured based on other standards and there's a violation, they can sue. All right, and what are those other standards? So turning to those other standards, several members of the court asked a question about, you know, is a trifle enough, and my friend says a trifle is enough. Certainly courts have said that, but courts have also not really ever applied that rule outside the context of the TCPA, and the courts applying it under the TCPA may have done so based on the idea that Congress did something in the TCPA to elevate those injuries. So if we look outside the TCPA context based on the conclusion that Congress didn't do anything there to expand access to courts, I don't think a minute annoyance would, in any world, provide access to courts for a claim. The de minimis analysis just seems to me to go to the merits, not to standing. I mean, is it not true that if your good friend Mr. Sostrin over there were to come up and to poke you in the back that you could sue him for battery? It would be a really bad case, but you'd have standing to sue him, would you not? But that's because there's a long history that any touching is actionable. Unconsented touching is actionable, no matter how small, right? Okay, so if the next-door neighbor in 1650 is banging his pots and pans too loud, couldn't the disturbed neighbor sue him for nuisance? Actually, not if it was a minute's annoyance. The restatement, just to quote the restatement section of TORS, section 821F, comment C, talks about the significant harm requirement for nuisance to be actionable. And the comment says, by significant harm, then harm of importance involving more than slight inconvenience or petty annoyance. The law does not concern itself with trifles, and therefore there must be a real and appreciable invasion of the plaintiff's interest before he can have an action for either a public or a private nuisance. But Stoker doesn't say we have to find that the action would actually give rise to the claim. There just needs to be an association with that type of harm. And the type of harm here, that privacy invasion, if you would recognize, as I think you do in your brief, that at some point there could be enough calls, even without economic harm, that there would be a statutory violation, where does the statute allow for line drawing there? Either the invasion, even one, is enough for standing, and then you deal with the strength of that claim, or it's not. Well, a couple of answers to that. First of all, I don't think, just going back to your Horizon question, Horizon and Nickelodeon said a specific kind of invasion of privacy was actionable. Dissemination of private information about people in Nickelodeon, information about minors, web surfing. It didn't say anything that could possibly be characterized as an invasion of privacy is actionable. All of these different kinds of privacy harms have to be looked at on their own terms, and the dissemination of private information is a traditional harm that courts have long recognized, and it's certainly analogous to common law harm. It's not just in Horizon, but Horizon was pointing to both Nickelodeon and Google, and in both of those we talked explicitly about the invasion of privacy involved in the placement of cookies onto computers, I think it's hard to divorce the fact, and I think the court in Nickelodeon explicitly said, it was not just the placement of cookies, it was the gathering and dissemination of the private information that the cookies enabled that was the actual harm, and they didn't rely on the statute as creating harm. The court specifically referred to a dissemination of that information to other parties. But there's no common law history of cases brought for cookies being placed on someone's computer, so don't we have to look at it at a very high level of generality? And why isn't there an analog between the cookies in Horizon and the robocalls on the cell phone? Because I think the cookies in Horizon were not cookies alone, they were cookies that enabled... It didn't bother somebody. It was the harvesting of the information and the use of the private information that was the harm. Well, that's bothersome, right? Presumably, to the person whose information they gathered. Disseminating people's private information is a traditional privacy interest. And having somebody wake you up at three in the morning with a robocall... And I think there would be standing there. That's not bothersome? I think there would be standing there. So then your argument is we don't look to whether one call was made, and you're conceding one call is sufficient, but it all depends upon the nature of the harm alleged in the complaint. I think the complaint has to allege harm that rises above some minimal level. Simply saying, I'm annoyed, can't be enough to get you into court. All right, but aren't we then... You're inviting us to supplant Congress' definition of nuisance with respect to robocalls. Because Congress has said any call. I mean, we didn't draft the statute. We didn't say any call. Congress said that. That's a pretty strict standard, isn't it? Your Honor, that's the exact argument that was rejected in Spokio. The plaintiff there said Congress determined any false information because the statute encompasses any false information and lots of other violations that are wholly procedural. The argument there, Congress said anything that violates this statute is harmful, and the court said no, that's not right. What Congress did was create a statutory violation. It didn't supplant unless you find otherwise. The ordinary rules that courts have to apply in other contexts... And you still have to evaluate whether it's concrete. Exactly. And if somebody says that your zip code is 02652 and it's actually 02651, there may not be concrete harm. But why is there not concrete harm whenever one receives an unwanted robocall? Because I think the question there is, is the claims about the harm there, are those claims that would be actionable in other contexts? I think that's a good test of whether the harm is being... Right, but with this technology, how do we know that? That's what I'm struggling with. Well, I guess what I would say is Congress always has the option to do something different, but I think the courts... I don't think if this were a NEPA claim that the court would say someone has standing to challenge the EIS for a project because if the project is built, they'll have to walk one day in their lives one minute out of their way, or the building of that project will cause them one minute of annoyance. I don't think anyone would say that's sufficient to give you standing to challenge a NEPA claim. And I think the test here is, is the kind of harm being alleged here, because we're not relying on anything that Congress did in the statute, the kind of harm that would give standing in other contexts? And I think it clearly isn't. The difference with your analogy is that here we are talking about the same kind of harm, whether we have one call or 100 calls. That's a matter of the quantity of it. It's not the nature of the injury. I don't think... I'm sorry. You're suggesting to us that one call is not actionable, but that there would be standing, it would be actionable if there were 50 calls, or if those calls took place at night rather than during the daytime. How could we engraft that onto the statute as what Congress meant in recognizing a type of injury? Because respectfully, this isn't, again, this isn't a question of what Congress meant, because what Congress did in the statute, unless the court finds that Congress expanded the class of people who satisfy Article III, is say, we're creating this cause of action, but the people who get to use it, the gate is the ordinary Article III standards. Why isn't it recognizing a historical cause of action? And aren't you recognizing that and saying, well, if it crosses a certain threshold, once the sun goes down or once there's a certain number of calls, then it is a traditional type of harm. I think that's exactly what the question is. It doesn't have to be exactly the same harm. There weren't phones in olden times. But I think it has to be the kind of significant harm or something like it that was actionable. So it's true. And how do we define significant? Well, I think the courts have to do this all the time in other contexts. So we have to do it in this context. So where along that spectrum, what number of calls would be significant? I don't think it's number of calls. I was going to respond to Judge Krause. Taking Your Honor's example, if there are ten calls that happen when some cell phone is left on the floor somewhere, there are no messages left, it seems to me it's very hard to say that person has suffered any concrete harm. On the other hand, if there's one call that comes during dinner, I would say in my house that's concrete harm. So I think the plaintiff has to plead. What about ten calls with a message left? The plaintiff has to plead facts. What about ten calls with voicemails left? If there are ten voicemails, yes, it seems to me that that begins to be something. Okay, you know where I'm going next. Yes, I do, Your Honor. Five voicemails? Open the bidding. This kind of line drawing. No, seriously, five. I appreciate your candor saying ten voicemails is enough. Are five voicemails enough? I guess I would say probably not. But I think people could differ. I think it's easy to say one isn't, which is the case. Because the normal person would be really annoyed to get ten voicemails but not so annoyed to get five. And really if we're talking one voicemail like this case, that's really your classic eggshell plaintiff. I think that's right, Your Honor. And I think what underlies Article III at the bottom is, is this a harm that is sufficient to invoke the federal judicial power? That's what the framers were looking at. And Judge Posner, you know, in the Gabbala opinion, which I think was issued after the briefing in this case, you know, talked about trifles shouldn't be enough to get into court. And it's hard, again, stepping back to not realize the reality of what's going on in this kind of litigation, which is really about, you know, aggregating statutory damages to a very large number. But I think the kind of determination, is this allegation enough? In environmental cases, courts have to do that all the time. Because aren't you asking us really to define standing? What conduct is unlawful in hindsight? No, Your Honor. And somebody doesn't know if they're, you know, a telemarketer doesn't know if their call is unlawful until somebody picks up the phone and it turns out they were in the middle of dinner. And so that would be actionable. No, Your Honor. The conduct is unlawful and if the FCC wants to use its power to go against it, it's perfectly fine. And there are lots of things that are unlawful that don't give rise to a private cause of action. That's the critical distinction that Spokio draws and that I'm trying to draw here. Yes, something that violates the statutory prohibition, just like the wrong zip code in Spokio, is unlawful. There's no doubt about it. But the question is, is it actionable in a private right of action? Does it open the doors to federal courts under Article III? And that's a determination in environmental cases. Courts do that all the time about whether environmental groups and their members have sufficient relationship to a national park or to a national monument in order to challenge some federal action related to it. Or do they have a sufficient relationship to some species to either argue that it should or shouldn't be designated as an endangered species? That's the kind of Article III determinations that courts make all the time. And in this context, that's the same kind of determination that has to be made. I know I've exceeded my time. Thank you. Thank you. Thank you. Rebuttal, Mr. Sostrin. I didn't mean to insinuate that you had designs on poking. I just had trouble coming up with a hypothetical. Thank you, Your Honors. I want to talk about this. This court should not decide whether or not this harm is significant. The Supreme Court said in the Scrap Case, we are not going to adopt a significant harm test because it is unworkable. As I think the questions from the panel show, it becomes almost a philosophical exercise. The question is, do we have someone who has made an identifiable grievance about an identifiable harm? The other thing I want to say is that in Gomez, the Supreme Court considered a TCPA claim that dealt with calls to cell phones, and in Justice Roberts' dissent, he says, all agree that plaintiff has standing. The other thing that I want to talk about is looking at historical practice. In Spokio, Congress talked about two types of harms, tangible harms and intangible harms. It's only for intangible harms that the Spokio court said, here's where historical practice is helpful. We have alleged tangible injuries in this case, which is the occupation of the voicemail. The call itself is tangible. These are not intangible harms that are more abstract. And so I think because of that, you don't even need to go into that inquiry. But if you do, as you know from the Henry Horizon case, the question is not have you alleged something that is sufficient at common law, because the Horizon case expressly rejects that proposition. You look to see whether the harm is similar. We cited cases in our brief where there are state courts that have upheld intrusion upon seclusion claims for telephone calls. So it's a similar type of harm. The other thing is was Congress concerned about an invasion of privacy with respect to calls to cell phones? The MIMS case, which also dealt with a TCPA cell phone call case, talked about what Congress's interests were, and it talked about how Congress was trying to ban acts that were invasive of privacy. So I think that's persuasive. And also the Ninth Circuit has already rejected this very argument in the Campbell-Iwag case. They said there is no evidence that Congress's interest in privacy ends at the home. But it found further, even if there was such evidence, that would be no reason to consider that privacy interests don't apply to cell phones because people use their cell phones in their home. So a privacy interest tied to the home would apply to cell phones because they are used in the home as well. Are you arguing that in 1991 Congress was attuned to the privacy concerns of cell phones, or are you arguing that it doesn't matter whether they were, even if they weren't, it still applies today because of the plain language of the statute? Well, I think there is sufficient evidence that Congress was concerned about privacy for the home. No, we know the home, cell phones. Sorry, sorry, for cell phones. And what's that evidence? That would be Section B2C, which provides the FCC with authority to create certain exemptions for calls made to cell phones, but only if they adopt conditions that are necessary to protect the privacy interests that Section B was enacted to protect. And so that's a provision in the statute that's dealing specifically with calls to cell phones and is saying that the FCC can only enact exemptions if you protect the privacy interests at issue in the statute. So unless there are any further questions, I'll rest there. Thank you. Thank you, Your Honors. Thank you. We appreciate the outstanding argument and briefing of both sides. The Court will take the motion.